1

2

3

4

5

6

7

8                          UNITED STATES DISTRICT COURT

9                      FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11   RICKY TYRONE FOSTER,                    Case No.  1:22-cv-00934-JLT-HBK (PC)

12              Plaintiff,                   AMENDED FINDINGS AND
                                             RECOMMENDATION TO DISMISS
13         v.                                ACTION

14   J. BURNES and T. CAMPBELL,              (Doc. No. 20)

15              Defendants.                  ORDER SUA SPONTE GRANTING
                                             PLAINTIFF EXTENSION OF TIME
16

17                                           14-DAY DEADLINE

18

19          Pending before the Court for screening under 28 U.S.C. § 1915A is Plaintiff's First

20   Amended Complaint.  (Doc. No. 20).  Also contained within the First Amended Complaint is

21   Plaintiff's construed second motion for recusal, which the undersigned addressed by separate

22   order.  (Doc. No. 23).  For the reasons set forth below, the undersigned recommends the District

23   Court dismiss the First Amended Complaint because it fails to state any cognizable constitutional

24   claim.

25                              **SCREENING REQUIREMENT**

26          A plaintiff who commences an action while in prison is subject to the Prison Litigation

27   Reform Act ("PLRA"), which requires, *inter alia*, the court to screen a complaint that seeks relief

28   against a governmental entity, its officers, or its employees before directing service upon any

defendant.  28 U.S.C. § 1915A.  This requires the court to identify any cognizable claims and dismiss the complaint, or any portion, if is frivolous or malicious, if it fails to state a claim upon which relief may be granted, or if it seeks monetary relief from a defendant who is immune from such relief.  *See* 28 U.S.C. §§ 1915A(b)(1), (2).

At the screening stage, the court accepts the factual allegations in the complaint as true, construes the complaint liberally, and resolves all doubts in the plaintiff's favor.  *Jenkins v. McKeithen*, 395 U.S. 411, 421 (1969); *Bernhardt v. L.A. County*, 339 F.3d 920, 925 (9th Cir. 2003).  The Court's review is limited to the complaint, exhibits attached, and materials incorporated into the complaint by reference, and matters of which the court may take judicial notice.  *Petrie v. Elec. Game Card, Inc.*, 761 F.3d 959, 966 (9th Cir. 2014); *see also* Fed. R. Civ. P. 10(c).  A court does not have to accept as true conclusory allegations, unreasonable inferences, or unwarranted deductions of fact.  *Western Mining Council v. Watt*, 643 F.2d 618, 624 (9th Cir. 1981).  Critical to evaluating a constitutional claim is whether it has an arguable legal and factual basis.  *See Jackson v. Arizona*, 885 F.2d 639, 640 (9th Cir. 1989).

The Federal Rules of Civil Procedure require only that a complaint include "a short and plain statement of the claim showing the pleader is entitled to relief . . . ."  Fed. R. Civ. P. 8(a)(2). Nonetheless, a claim must be facially plausible to survive screening.  This requires sufficient factual detail to allow the court to reasonably infer that each named defendant is liable for the misconduct alleged.  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Moss v. U.S. Secret Service*, 572 F.3d 962, 969 (9th Cir. 2009).  The sheer possibility that a defendant acted unlawfully is not sufficient, and mere consistency with liability falls short of satisfying the plausibility standard. *Iqbal*, 556 U.S. at 678; *Moss*, 572 F.3d at 969.  Although detailed factual allegations are not required, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice," *Iqbal*, 556 U.S. at 678 (citations omitted), and courts "are not required to indulge unwarranted inferences," *Doe I v. Wal-Mart Stores, Inc.*, 572 F.3d 677, 681 (9th Cir. 2009) (internal quotation marks and citation omitted).

If an otherwise deficient pleading can be remedied by alleging other facts, a pro se litigant is entitled to an opportunity to amend their complaint before dismissal of the action.  *See Lopez v.*

*Smith*, 203 F.3d 1122, 1127-29 (9th Cir. 2000) (en banc); *Lucas v. Department of Corr*., 66 F.3d 245, 248 (9th Cir. 1995).  However, it is not the role of the court to advise a pro se litigant on how to cure the defects.  Such advice "would undermine district judges' role as impartial decisionmakers."  *Pliler v. Ford*, 542 U.S. 225, 231 (2004); *see also Lopez*, 203 F.3d at 1131 n.13.  Furthermore, the court in its discretion may deny leave to amend due to "undue delay, bad faith or dilatory motive of the part of the movant, [or] repeated failure to cure deficiencies by amendments previously allowed . . . ." *Carvalho v. Equifax Info. Srvs., LLC*, 629 F.3d 876, 892 (9th Cir. 2010).

## BACKGROUND AND SUMMARY OF OPERATIVE COMPLAINT

Plaintiff initiated this action by filing a pro se civil rights complaint in Kings County Superior Court, which Defendants removed to this Court.  (Doc. No. 1).  On June 2, 2023, the undersigned screened Plaintiff's Complaint and found that it failed to state a claim.  (Doc. No. 12, "Screening Order").  On August 10, 2023, after Plaintiff failed to timely respond to the Court's Screening Order, the undersigned issued a Findings and Recommendation ("F&R") to dismiss the Complaint for failure to prosecute and comply with court orders.  (Doc. No. 16).  On September 5, 2023, the Court granted Plaintiff's request for an extension of time to file objections to the F&R.  (Doc. No. 19).  On September 20, 2023, Plaintiff filed an untimely First Amended Complaint ("FAC") in addition to filing Objections to the F&R.  (Docs. No. 20, 21).  Although Plaintiff did not accompany his untimely FAC with a motion seeking an extension of time, the Court sua sponte grants an extension of time and will screen the FAC.  The Court issues this Amended Findings and Recommendation due to Plaintiff's filing of a FAC, mooting Plaintiff's Objections to the August 10, 2023 F&R.

The FAC consists of 65 pages, of which 52 pages are exhibits, including Plaintiff's grievances and appeals and the institution's responses, excerpts of medical reports, and signed declarations from CDCR inmates Luis Estrada, Myron Payne, and Curtis Hunter.  (*See* Doc. No. 20 at 12-65).  The events giving rise to the FAC took place at Corcoran State Prison ("COR").  (*See generally id*.).  The FAC names two Defendants: (1) Sergeant J. Burnes and (2) COR Acting Warden T. Campbell, and largely repeats the same allegations set forth in the original complaint.

The following facts are presumed true at this stage of the screening process.

On July 19, 2021, Plaintiff was transported from Substance Abuse Treatment Facility to COR along with approximately 14 other inmates.  (*Id*. at 4).  Upon arrival, Plaintiff was summoned off the van by Defendant Burnes and taken to a holding cage in the very back of the receiving and release ("R&R") area.  (*Id*.).  When Plaintiff asked Burnes why he was being held there, Burnes told him it was because Plaintiff was on single cell status and "holding tanks are considered cell[s] here at Corcoran; and welcome back to Corcoran[.]" (*Id*.).  Plaintiff was placed in the holding cage around 10:30 a.m.  (*Id*.).  For the next six hours, Plaintiff states he did not see any prison staff and was not offered water, food, access to bathrooms, or medical attention.  (*Id*.).  The temperature that day was being held was "well above 100 degrees" and the holding cage area had no air conditioning, and the humidity "was well above 80 degree's [sic]."[1]  (*Id*. at 9).  The FAC notes that Plaintiff has several medical conditions for which he takes medication, including (1) an H. Pylori infection, (2) GERD (or gastroesophageal reflux disease), (2) high blood pressure, (3) seven deformed ribs, and (4) an unspecified mental health condition.  (*Id*. at 6).

Around 4:30 pm, an unknown correctional officer came by Plaintiff's holding cell.  (*Id*. at 4).  Plaintiff asked the correctional officer for water and use of the toilet.  (*Id*.).  The officer asked Plaintiff why he there and Plaintiff responded he did not know.  (*Id*. at 5).  The officer left and returned about 20-30 minutes later and moved Plaintiff to a holding cell with 8 out of 14 of the other transferred inmates.  (*Id*.).

As a result of his detention in the holding cage for approximately six hours, Plaintiff suffered dehydration and distress.  (*Id*.).  The FAC alleges that Defendant Burnes placed Plaintiff in the holding cage in retaliation for Plaintiff's filing of grievances against other COR staff.  (*Id*. at 7).  Plaintiff also alleges he was "deprived of any medical care or, mental health supervision"

---

[1] Liberally construed, the FAC appears to allege the outdoor air temperature was 100 degrees and the inside temperature was 80 degrees.  Federal Rule of Evidence 201 permits a court to take judicial notice of facts that are "not subject to reasonable dispute" because they are either "generally known within the trial court's territorial jurisdiction," or they "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned."  Fed. R. Evid. 201(b).  The Court takes judicial notice that the recorded high temperature was 100 degrees and 73 degrees at night in Corcoran on July 19, 2021  *See* https://world-weather.info/forecast/usa/corcoran/july-2021.

1   during these six hours.  (*Id*. at 6).  As relief, Plaintiff seeks compensatory damages of

2   $1,000,000.00 against each Defendant, and $100,000 in punitive damages against each

3   Defendant.  (*Id*. at 11).

4   <center>**APPLICABLE LAW AND ANALYSIS**</center>

5       **A.  Eighth Amendment Conditions of Confinement**

6          "[T]he treatment a prisoner receives in prison and the conditions under which he is

7   confined are subject to scrutiny under the Eighth Amendment," which prohibits "cruel and

8   unusual punishment."  *Helling v. McKinney*, 509 U.S. 25, 31 (1993); U.S. Const. Amend. VIII.

9   A violation of the Eighth Amendment requires a showing of both an "objective component"—the

10   objective seriousness of the challenged condition, and a "subjective component"—the responsible

11   official's subjective state of mind.  *Farmer v. Brennan*, 511 U.S. 825, 834 (1994); *Wilson v.*

12   *Seiter*, 501 U.S. 294, 298 (1991).  In challenging living conditions under the Eighth Amendment,

13   a prisoner must establish "unquestioned and serious deprivations of basic human needs" or the

14   absence of the "minimal civilized measure of life's necessities."  *Rhodes v. Chapman*, 452 U.S.

15   337, 347 (1981); *accord Hudson v. McMillian*, 503 U.S. 1, 9 (1992).  Basic human needs

16   identified by the Supreme Court include "food, clothing, shelter, medical care and reasonable

17   safety," *Helling*, 509 U.S. at 32, as well as "warmth [and] exercise."  *Wilson*, 501 U.S. 304-05.

18   Factors affecting whether a condition is sufficiently serious include its duration, the attendant

19   circumstances, and the nature of the particular deprivation.  *Johnson v. Lewis*, 217 F.3d 726, 731

20   (9th Cir. 2000).  The Ninth Circuit has found prisoners have a right to sanitation.  *Hoptowit v.*

21   *Ray*, 682 F.2d 1237, 1246 (9th Cir. 1982), *abrogated on other grounds by Sandin v. Conner*, 515

22   U.S. 472, 115 S. Ct. 2293, 132 L. Ed. 2d 418 (1995).  But the lack of sanitation must be severe or

23   prolonged to rise to an Eighth Amendment violation.  *Anderson v. County of Kern*, 45 F.3d 1310,

24   1314, as amended, 75 F.3d 448 (9th Cir. 1995); see *also Vinning-El v. Long*, 482 F.3d 923, 924-

25   25 (7th Cir. 2007) (six days confined inside cell with floor covered in water, no working

26   plumbing, walls smeared with blood and feces, no mattress, sheets, toilet paper or personal

27   hygiene items rose to Eight Amendment violation).  Temporary placement in administrative

28   segregation or a holding cell has been found not to rise to the level of a constitutional violation.

<center>5</center>

1   *See Stafford v. Doss*, 2021 WL 3563490, at *12 (E.D. Cal. Aug. 12, 2021) (four hours in

2   temporary holding cell did not rise to level of Eighth Amendment violation), *report and*

3   *recommendation adopted*, 2021 WL 4356036 (E.D. Cal. Sept. 24, 2021); *see also Anderson*, 45

4   F.3d 1310 (placement in administrative segregation for "most of the day" did not satisfy objective

5   prong of Eighth Amendment).

6       To satisfy the subjective prong, the inmate must show that the prison official was

7   deliberately indifferent—"possessed a sufficiently culpable state of mind."  *Wilson*, 501 U.S. 297-

8   98.  This requires the official to be aware of the substantial risk of harm and disregard that risk by

9   failing to abate it using reasonable measures.  *Farmer*, 511 U.S. at 837-45.  This level requires

10  more than negligence but less than actual malice.  *Id.* at 835-36.

11      Here, Plaintiff states that he was placed in a holding cell for roughly six hours without

12  being provided access to food, water, air conditioning, use of the toilet, or access to his

13  medication, "with extreme central valley heat well above 100 degrees in a closed room whose

14  humidity was well above 80 degree's [sic]."  (Doc. No. 20 at 9).  Plaintiff notes that he suffers

15  from high blood pressure, an H. Pylori infection, GERD, and seven deformed ribs that he treats

16  with pain medication.  (*Id.* at 6).   Plaintiff claims he suffered dehydration and distress due to his

17  six-hour confinement in the holding cell.  (*Id.* at 5).

18      The Ninth Circuit has recognized that subjecting inmates to excessive heat may constitute

19  cruel and unusual punishment in violation of the Eighth Amendment.  *See Johnson*, 217 F.3d at

20  729–30, 732; *Douglas v. Smelosky*, 2014 WL 3534702, at *9 (S.D. Cal. July 16, 2014)

21  ("[e]xtreme heat conditions can be sufficiently serious to satisfy the objective requirement of an

22  Eighth Amendment claim"); *see also Hope v. Pelzer*, 536 U.S. 730, 738 (2002) ("knowingly

23  subject[ing] inmate to unnecessary exposure to the heat of the sun, to prolonged thirst and

24  taunting, and to a deprivation of bathroom breaks" violated the Eighth Amendment).  "When

25  considering an allegation that prisoners are exposed to extreme temperature, courts should

26  examine factors such as the severity of the temperature, the duration, whether there are

27  alternatives to protect prisoners, and whether there are other uncomfortable conditions combined

28  with the temperature."  *Pagett v. Arpaio*, 2009 WL 2590119, at *5 (D. Ariz. Aug. 21, 2009)

(citations omitted).  Although Plaintiff claims he suffered dehydration due to his confinement in the holding cell without central air conditioning in excessive heat, Plaintiff does not allege that he suffered any physical injury, severe symptoms, or otherwise required medical attention as a result of his detention in the holding cell.  (*See* Doc. No. 20).  To establish an Eighth Amendment violation, a plaintiff must demonstrate a "serious deprivation."  The mere fact that Plaintiff did not have air conditioning for six hours while housed in a holding cell inside the Receiving and Reception area and suffered dehydration is insufficient to establish an objectively serious condition under the Eighth Amendment.

The fact that after six hours in the holding cage Plaintiff was transferred to another holding cell, without the need for any medical attention, supports the inference that Plaintiff did not suffer any serious deprivation.  *See Heilman v. Lyons*, 2013 WL 3772471, at *17 (E.D. Cal. July 16, 2013) (finding plaintiff did not allege a serious medical condition after suffering dehydration and gastroenteritis where he was treated in the prison infirmary with IV fluids for about two hours then released in stable condition); *see also Cornellier v. Walker*, 2005 WL 8162308, at *2 (D. Ariz. Jan. 11, 2005) (finding "temporary dehydration does not set forth a sufficiently serious deprivation" to state Eighth Amendment claim).  Because the FAC does not allege Plaintiff suffered more than temporary dehydration as a result of his detention in the holding cage, it does not set forth a serious deprivation sufficient to establish an Eighth Amendment conditions of confinement claim.

Similarly, Plaintiff states that he did not have access to a toilet for the six hours he was held in a holding cell.  But a lack of sanitation must be severe or prolonged to rise to an Eighth Amendment violation.  *Anderson*, 45 F.3d at 1314, as amended, 75 F.3d 448 (9th Cir. 1995); s*ee, e.g., Gee v. Estes*, 829 F.2d 1005, 1006 (10th Cir. 1987) (Eighth Amendment claim established by allegations that prisoner was placed naked in a lice-infested cell with no blankets in below forty-degree temperatures, denied food or served dirty food, and left with his head in excrement while having a seizure); *McCray v. Burrell*, 516 F.2d 357, 366–69 (4th Cir. 1974) (finding serious deprivation where prisoner placed naked in bare, concrete, "mental observation" cell with excrement-encrusted pit toilet for 48 hours after he allegedly set fire to his cell; prisoner had no

bedding, sink, washing facilities, or personal hygiene items, and he was not seen by a doctor until after he was released); *Vinning-El v. Long*, 482 F.3d 923, 924-25 (7th Cir. 2007) (six days confined inside cell with floor covered in water, no working plumbing, walls smeared with blood and feces, no mattress, sheets, toilet paper or personal hygiene items rose to Eight Amendment violation).  While lack of access to sanitation for six hours may cause discomfort, it does not present the kind of severe deprivation that courts have found establishes a constitutional violation.  Accordingly, Plaintiff fails to allege a constitutional claim based on his lack of toilet access.

Finally, the FAC alleges that Plaintiff did not have access to his medications while he was held in the holding cage.  Again, the FAC does not assert that Plaintiff experienced any medical needs related to his medical conditions during the six hours he was placed in the holding cage, nor that he needed medical attention once released or indeed was harmed by his inability to access his medications.  Indeed, the FAC is devoid of any allegation that Plaintiff sought to call the attention of prison staff while he was confined in the holding cage, for medical attention or otherwise, which tends to weaken the inference that he was suffering from a serious medical condition or other need.  For all the reasons set forth above, the Court does not find that Plaintiff has satisfied the first prong of the conditions of confinement analysis, i.e. an objectively serious risk to Plaintiff's health and wellbeing.

The conditions alleged here were undoubtedly unpleasant, and the court does not suggest they were appropriate.  For the reasons set forth above, however, Plaintiff has not satisfied the first prong of the Eighth Amendment deliberate indifference analysis.  The undersigned therefore need not analyze whether Defendant Burnes had a sufficiently culpable state of mind to satisfy the subjective prong of the Eighth Amendment analysis.  And because the FAC does not set forth facts demonstrating a serious deprivation sufficient to satisfy the objective prong of the Eighth Amendment analysis, the Court finds the FAC fails to state an Eighth Amendment conditions of confinement claim.

**B.  Retaliation**

Prisoners have a First Amendment right to file a grievance or civil rights complaint against correctional officials.  *Brodheim v. Cry*, 584 F. 3d 1262, 1269 (9th Cir. 2009).  "Within

8

the prison context, a viable claim of First Amendment retaliation entails five basic elements: (1) An assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal." *Rhodes v. Robinson*, 408 F.3d 559, 567–68 (9th Cir. 2005).  A retaliatory motive may be shown by the timing of the allegedly retaliatory act or other circumstantial evidence, as well as direct evidence.  *Bruce v. Ylst,* 351 F.3d 1283, 1288–89 (9th Cir. 2003); *McCollum v. Ca. Dep't of Corr. And Rehab*., 647 F.3d 870, 882 (9th Cir. 2011).  Circumstantial evidence usually includes "(1) proximity in time between protected speech and the alleged retaliation; (2) [that] the [defendant] expressed opposition to the speech; [or] (3) other evidence that the reasons proffered by the [defendant] for the adverse . . . action were false and pretextual."  *Id.* (quoting *Allen v. Iranon*, 283 F.3d 1070, 1077 (9th Cir.2002)) (quotation marks omitted).  Mere speculation that a defendant acted out of retaliation is not sufficient.  *Wood v. Yordy,* 753 F.3d 899, 904 (9th Cir. 2014) (citing cases).

The FAC alleges that Plaintiff's prolonged detention in the holding cell on July 19, 2021 was done "in response to, pending civil actions against other prison guards & warden at [C]orcoran. (*Foster v. Sexton*, warden Case #18C-0032 and *Foster v. Baker, et al*., 1:18-cv-01511-DAD-SAB.)"  (Doc. No. 20 at 7).  Beyond asserting that Plaintiff had filed these specified pending civil actions against other correctional staff and not Defendant Burnes, the FAC asserts no other facts from which the Court can infer that Defendant Burnes' actions were taken for retaliatory reasons.  To establish a causal connection for purposes of a retaliation claim, a plaintiff must offer evidence that the defendants knew about the protected conduct.  *Corales v. Bennett*, 567 F.3d 554, 568 (9th Cir. 2009).  In addition, plaintiff must show "either direct evidence of retaliatory motive or at least one of three general types of circumstantial evidence [of that motive]."  *McCollum v. Cal. Dep't of Corr. & Rehab*., 647 F.3d 870, 882 (9th Cir. 2011) (alteration in original) (*quoting Allen v. Iranon*, 283 F.3d 1070, 1077 (9th Cir. 2002)).

Here, the FAC does not allege any facts to indicate that Defendant Burnes was aware of the protected First Amendment conduct referenced in the FAC.  Moreover, the Court takes

9

judicial notice of the fact that *Foster v. Baker* was filed nearly three years before the July 19, 2021 incident, and in fact was closed on July 19, 2021 by a District Court order. [2]  The Court is unable to locate an Eastern District case captioned *Foster v. Sexton*, but based on the partial case number provided, it appears the case was filed in 2018, 2.5 to 3 years prior to the July 19, 2021 incident.  Given the delay between the filing of the cases cited, and the fact that one of the cases was closed on the date of the incident in question, the Court cannot infer from timing alone that Defendant Burnes' actions were taken in response to those cases.

Nor does the FAC allege other facts that would support such an inference.  Defendant Burnes' vague comments to Plaintiff that holding cages are considered single cells at Corcoran, and "welcome back to Corcoran" are not sufficient to establish that Burnes' placement of Plaintiff in the holding cage was done in retaliation for Plaintiff's protected first amendment conduct.

In fact, the exhibits attached to Plaintiff's FAC support the inference that Defendant Burnes' actions were taken for the legitimate penological purpose of complying with Plaintiff's single-cell and maximum custody classification.  (*See* Doc. No. 20 at 21) (institutional response to Plaintiff's grievance noting that Plaintiff's "isolation was required by departmental policy" due to his "single cell status, Maximum custody status" and the lack of any other available holding location).  Nor do the declarations from CDCR inmates Estrada, Payne and Hunter support a contrary inference.  Each of the identical declarations merely attest that Plaintiff was called off the transport van separately and prior to the other arriving inmates.  These facts are already deemed true based on Plaintiff's factual allegations regarding the July 19, 2021 incident (see above), and do not support a finding that Burnes called Plaintiff off the van for any malicious purpose.  Because there are no facts supporting a finding that Burnes treated Plaintiff differently out of retaliation, Plaintiff's First Amendment retaliation claim amount to mere speculation, which is insufficient to state a cognizable claim.  *Wood*, 753 F.3d at 904.  The Court therefore

---

[2] Courts may judicially notice other court proceedings "if those proceedings have a direct relation to the matters at issue."  *United States ex. Rel. Robinson Rancheria Citizens Counsel v. Borneo, Inc.*, 971 F.2d 244, 248 (9th Cir. 1992) (citations and internal quotation marks omitted); *Trigueros v. Adams*, 658 F.3d 983, 987 (9th Cir. 2011).  However, a court may not take judicial notice of findings of facts from another case.  *Walker v. Woodford*, 454 F. Supp. 2d 1007, 1022 (S.D. Cal. 2006).

1  finds the Complaint fails to state a First Amendment retaliation claim.

2          **C.  Denial of Grievance by Campbell**

3          As Plaintiff was previously advised in the Court's June 2, 2023 Screening order, "[a]

4  prison official's denial of a grievance does not itself violate the constitution." *Penton v. Johnson*,

5  2019 WL 6618051, at *6 (E.D. Cal. Dec. 5, 2019) (quoting *Evans v. Skolnik*, 637 F. App'x 285,

6  288 (9th Cir. 2015)).  "An allegation that a prison official inappropriately denied or failed to

7  adequately respond to a grievance, without more, does not state a claim under § 1983." *Evans*,

8  637 F. App'x at 288, citing *Ramirez* v. Galaza, 334 F.3d 850, 860 (9th Cir. 2003) ("Ramirez's

9  claimed loss of a liberty interest in the processing of his appeals does not satisfy this standard,

10  because inmates lack a separate constitutional entitlement to a specific prison grievance

11  procedure."); *see also Alford v. Gyaami*, 2015 WL 3488301, at *10 n.2 (E.D. Cal. June 2, 2015)

12  ("Even if prison officials delay, deny, or erroneously screen out a prisoner's inmate grievance,

13  they have not deprived him of a federal constitutional right."); *Wright v. Shannon*, 2010 WL

14  445203, at *5 (E.D. Cal. Feb. 2, 2010) (allegations that prison officials denied or ignored inmate

15  appeals failed to state a cognizable claim under the First Amendment).

16          Liberally construed, the FAC asserts that Acting Warden Campbell violated his

17  constitutional rights by issuing a grievance appeals response that did not find any evidence that

18  Plaintiff was denied water or bathroom breaks or evidence of retaliation by Defendant Burnes.

19  (Doc. No. 20 at 5).  However, it is well-settled that denial of a prison grievance does not amount

20  to a constitutional violation.  *See Penton*, 2019 WL 6618051 at 6.  Accordingly, the FAC fails to

21  allege a due process claim based on Defendant Campbell's denial of Plaintiff's grievance.

22          **D.  Equal Protection**

23          In passing, Plaintiff claims if he "was a white male, [he] would not had [sic] been

24  subjected to such due process violation, as Sgt. Burnes is white, and did so, under 'color of state

25  law.'" (*Id*. at 5).  Equal protection claims arise when a charge is made that similarly situated

26  individuals are treated differently without a rational relationship to a legitimate state purpose.  *See San*

27  *Antonio School District v. Rodriguez,* 411 U.S. 1 (1972).  To state a § 1983 claim based on a violation

28  of the equal protection clause of the Fourteenth Amendment, a plaintiff must establish that defendants

1  acted with intentional discrimination against a class of inmates which included plaintiff.  *Lowe v. City*

2  *of Monrovia,* 775 F.2d 998, 1010 (9th Cir.1985); *Federal Deposit Ins. Corp. v. Henderson,* 940 F.2d

3  465, 471 (9th Cir.1991).  Racial discrimination in prison and jails is unconstitutional under the

4  Fourteenth Amendment except for the "necessities of prison security and discipline."  *Cruz v. Beto,*

5  405 U.S. 319, 321 (1972).  Here the FAC contains no factual allegation, other than identifying

6  Defendant Burnes' race as "white" for this Court to infer that Plaintiff's equal protection rights were

7  violated and is insufficient to state an equal protection claim.  Further, Plaintiff acknowledges that

8  Defendant Burns told him that he was being placed in the holding cage due to his "single cell status"

9  classification.  (Doc. No. 20 at 4).  Indeed, the attachments to the FAC confirm that "Plaintiff's single

10  cell status, maximum custody status, and fact that every other holding location in R&R was full"

11  required Plaintiff's temporary placement in the holding cell as "the only available option" and was

12  "necessary for the safety of the Claimant, and the security of the institution."  (*Id*. at 21).

### CONCLUSION AND RECOMMENDATION

14  Based on the above, the undersigned finds Plaintiff's FAC fails to state any cognizable

15  claim.  The FAC suffers from many of the same pleading deficiencies that the undersigned

16  identified and explained to Plaintiff in screening his original Complaint.  The FAC essentially

17  mirrors Plaintiff's initial complaint and reasserts the same claims previously found to be deficient

18  without remedying the defects that the Court identified in its original Screening Order.  Despite

19  being provided with guidance and the appropriate legal standards, Plaintiff was unable to cure the

20  deficiencies identified above.  Thus, the undersigned recommends that the district court dismiss

21  the FAC without further leave to amend.  *McKinney v. Baca*, 250 F. App'x 781 (9th Cir. 2007)

22  (citing *Ferdik v. Bonzelet,* 963 F.2d 1258, 1261 (9th Cir. 1992)) (noting discretion to deny leave

23  to amend is particularly broad where court has afforded plaintiff one or more opportunities to

24  amend his complaint).

25  Accordingly, it is **ORDERED**:

26  1.  The Court sua sponte grants Plaintiff an extension of time to file a first amended

27  complaint.

28

2.   The Court recalls the August 10, 2023 Findings and Recommendations (Doc. No. 16) and issues these Amended Findings and Recommendations.

Further, it is **RECOMMENDED**:

The First Amended Complaint (Doc. No. 20) be dismissed under § 1915A for failure to state a claim and Plaintiff be denied further leave to amend.

## NOTICE

These Findings and Recommendations will be submitted to the United States District Judge assigned to this case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  **Within 14 days of the date of service** of these Findings and Recommendations, a party may file written objections with the Court.  The document should be captioned, "Objections to Magistrate Judge's Findings and Recommendations." A party's failure to file objections within the specified time may result in waiver of his rights on appeal.  *Wilkerson v. Wheeler*, 772 F.3d 834, 839 (9th Cir. 2014) (citing *Baxter v. Sullivan*, 923 F.2d 1391, 1394 (9th Cir. 1991)).

Dated:    __December 11, 2023__

HELENA M. BARCH-KUCHTA
UNITED STATES MAGISTRATE JUDGE

13